IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

BLENKO GLASS COMPANY            Case No. 3:11-bk-30332
                                                 Chapter 11
        Debtor.

**OBJECTION OF THE CREDITORS COMMITTEE
TO THE PROPOSED CHAPTER 11 PLAN**

Now comes the Creditors Committee, by and through undersigned counsel, and represents to this Court as follows:

1. That the Creditors Committee has requested that the Chapter 11 Debtor provide some projections as to income and expenses. The Chapter 11 Plan does not contain any accounting information from which the Creditors Committee, the Court or other creditors can evaluate the projections for the Debtor's performance. On information and belief the Court as well as interested creditors should have some projections as to the income and expenses of the Debtor to determine whether or not the Debtor's projections of payments in their plan represents their best and finest effort to repay creditors. Without that information, on information and belief the plan is deficient and the creditors cannot make an informed decision as to whether or not the proposed plan is offered in good faith and represents the Debtor's best efforts. The Debtor has informed counsel projections are not necessary because the debtor does not make money and the principals of the debtor will have to lend money to fund a plan. (A letter sent from Debtor's counsel to the Creditors Committee reflecting the same is attached hereto.) On information and belief the Debtor must believe that it has a viable business and can generate income over expense in some foreseeable time frame or else it would terminate operations.

2. That the Creditors Committee has suggested that the Debtor should engage in some efforts to determine the best way to market Blenko Glass on a going forward basis. On information and belief the Blenko Glass "brand" is a substantial unvalued asset. Although the "brand" may not be easily valued, the name does enjoy a reputation of quality both in terms of design and workmanship and should be a positive in an effort of the debtor to

expand both their market position as well as their sales. The Chapter 11 Plan does not indicate any efforts that have been made or will be made to increase the sale of products designed and manufactured by the Debtor or what efforts the Debtor has made and will be making to increase their sales. The Creditors Committee believes that a refreshed look at marketing would benefit the Debtor. The committee believes that such increased marketing could project into greater sales. If income projections are made (which have been requested) and if increased marketing efforts are made then the Debtor could increase its annual sales and income.

3. That on information and belief the Chapter 11 Plan does not adequately disclose how the collection of historic objects manufactured by the Debtor will be utilized, whether those objects will be retained on site as a element of future marketing or in the alternative whether or not some or all of that glass that has been manufactured in the past by Blenko should be offered for sale to increase dollars that could be paid to creditors.

4. That on information and belief the Chapter 11 Plan should make a greater effort to pay creditors who have helped keep the Debtor in business as opposed to paying principals back money that has been lent to the corporation. On information and belief those principals who will be retaining the ownership of their shares should not be paid to the detriment of the trade creditors who have also involuntarily provided value to allow the Debtor to continue to operate thinking they would be paid.

5. If the debtor when reorganized will not make money why should the debtor continue operation; on information and belief the debtor must believe it will be successful in the future or else they would shut down.

**WHEREFORE**, the unsecured Creditors Committee requests this Court to require the Debtor to provide additional information for consideration of the Creditors Committee and all creditors as well as the Court prior to approving the disclosure.

> BLENKO GLASS COMPANY
> CREDITORS COMMITTEE
> By Counsel

_____
ANDREW S. NASON (WVSB #2707)
Counsel for Unsecured Creditor Committee
Pepper & Nason
8 Hale Street
Charleston, WV 25301
(304) 346-0361



1500 Chase Tower • 707 Virginia Street, E. • Charleston, WV 25301

Mailing Address: P.O. Box 2031 • Charleston, WV 25327

(304) 345-8900 • Fax: (304) 345-8909

www.kaycasto.com

email: sthomas@kaycasto.com
after hours extension: 111

# KAY CASTO & CHANEY PLLC
*Attorneys at Law*

October 11, 2011

Vincent J. Smith, Esquire
Pepper & Nason
8 Hale Street
Charleston, WV 25301

Dear Mr. Smith:

This responds to your letters dated September 27 and September 30, 2011, conveying questions from the Unsecured Creditors Committee of Blenko Glass Company relating to its Disclosure Statement and Plan of Reorganization.

**1. Financial Projections and Economizing Costs of Production.** You indicate that the Committee is concerned with the absence of financial projections in the Disclosure Statement. The Company believes that the Valuation Analyst's Representation ("Valuation") prepared by Hess Stewart & Campbell, PLLC, covers this subject. As described in the Disclosure Statement, since October, 2005, Blenko Glass has relied on infusions of capital and substantial loans from Walter and Don Blenko to subsidize its operations. Although the Company's operations have stabilized, it still periodically requires additional loans from the Blenkos. The Valuation performed by Hess Stewart and Campbell, PLLC, concludes that:

> "the Company is not expected to generate a positive income stream that is needed to use any income based approach [to valuation]. As such, the value determined under an income approach will be zero dollars ($0)....Further, the only result of any income based methodology must be zero dollars ($0), as the historical and anticipated future cash flows of the Company are negative. As such, the value of the company using any reasonable method to value a going concern is zero dollars ($0)."

Literally, what the Committee is asking for is a projection of the amounts of additional loans which Walter and Don Blenko will be required to make, to enable Blenko Glass to continue its operations. We respectfully suggest that no purpose would be served by this exercise. On the Effective Date of the Plan, Walter and Don Blenko will have to make additional loans to enable the Company to make the required distribution, which is more than unsecured creditors would receive if the case were converted to chapter 7.

The Committee's inquiry regarding economizing the costs of production is related to the subject of financial projections. Blenko Glass has explored ways by which it could lower its costs of production. The short answer is that any measures which would achieve this would require an additional substantial capital investment. Beginning in 2009, the Company has requested financial assistance from the State of West Virginia, which has not been forthcoming.



Thus, any injection of new capital necessarily would have to come from Walter and Don Blenko. In the near term, any savings that could be achieved by such an investment would be more than offset by the cost of the investment needed to enable this, and there is no guarantee that the Company would in fact be able to repay the new investment. Given the uncertainty presented by the present bankruptcy proceeding, Walter and Don Blenko are unwilling to commit to a further capital investment in the Company, in addition to committing to a distribution to unsecured creditors.

**2. PBS Sales and Witek & Novak.** Some PBS stations continue to feature Blenko Glass products, and Walter Blenko has appeared on several stations over the past several years. Walter Blenko has in fact been in touch with John Witek regarding future PBS productions, which could enhance sales. In order to move forward with this, the Company will need to restructure its contract with Witek and Novak. Under the terms of the operative agreement, Blenko Glass is obligated to pay commissions to Witek and Novak ranging from 15% to 30% on PBS generated sales, with guaranteed payments of $2,000 per week. Under this arrangement, Blenko Glass realistically could never achieve any net profit. The actual PBS sales, while significant in volume, proved to be financially disastrous for Blenko Glass, as witnessed by the fact that the Company owes Witek and Novak between $83,451 (Schedule F) and $99,645 (Proof of Claim). A copy of the letter agreement with Witek and Novak is attached for your reference. Blenko Glass intends to file a Motion to reject this contract, if it cannot be modified to substantially reduce the commissions payable.

**3. Artistic Designer.** Blenko Glass currently uses Arlon Bayliss of Anderson University, who most recently designed the 2011 West Virginia Day piece. A number of designs over the years have evolved internally, and Blenko Glass continues to encourage that activity by its own craftsmen.

**4. Marketing.** Traditionally, Blenko had worked through regional sales representatives who solicited orders and were paid commissions on orders they generated. Those representatives maintained show rooms in which they had a selection of Blenko products which could be viewed by customers who visited those showrooms. Within the last several years, that style of merchandising has been in decline with many of trade representatives closing their showrooms. As a consequence, Blenko has been moving to making direct sales at regional trade shows in such places as New York, Atlanta and Dallas. Those sales have been improving, both in terms of volume and also in obtaining new accounts.

In fact, the Company is marketing over the internet. Blenko Glass has a website www.blenko.com. The website has recently been upgraded to feature the company, and it includes a way to order product on line. I personally know this to be true, because my niece, who is to be married soon, is registered with Blenko Glass. See attached link: http://www.myregistry.com/visitors/GiftList.aspx?param=4&sid=2e552fea-58c7-443a-9fef-c17b29062f15.



In addition to these marketing efforts, Blenko Glass also has an active email newsletter campaign that highlights events and opportunities for customers to buy. This newsletter is sent out to 4,230 customers that have requested to be on the Company's mailing list.

Thank you and the Committee for your questions and suggestions. Please share this information with the Committee and let us know if they have any further comment.

Sincerely,

Steven L. Thomas

cc: Walter J. Blenko Jr.
Don B. Blenko, Jr.
Katie Trippe

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

BLENKO GLASS COMPANY

Case No. 3:11-bk-30332
Chapter 11

Debtor.

**CERTIFICATE OF SERVICE**

I, Andrew S. Nason, counsel for the Unsecured Creditors Committee, do hereby certify that the foregoing *Objection of the Creditors Committee to the Proposed Chapter 11 Plan* was served upon the following by depositing true and exact copies thereof in the United States mail, first class, postage prepaid, on this the 19 day of October, 2011.

Steven L. Thomas
Kay Casto & Chaney, PLLC
PO Box 2031
Charleston, WV 25327-2031

United States Trustee
*served electronically*

ANDREW S. NASON (WVSB #2707)
Counsel for Unsecured Creditor Committee
Pepper & Nason
8 Hale Street
Charleston, WV 25301
(304) 346-0361